A93A1755. HOWARD v. THE STATE.
(441 SE2d 759)

POPE, Chief Judge.

Defendant was convicted by a jury of raping a 50-year-old woman who was mentally retarded and partially paralyzed. Following the denial of his motion for a new trial, he appeals the judgment entered on his conviction.

The victim testified that one night a man came into her bedroom where she was sleeping; that he moved her panties down, touched her

with his penis and put it inside her; that she did not want him to do this; and that it hurt. The victim's personal physician testified that the victim's hymen was intact eight months prior to this incident, and the emergency room doctor who examined the victim following the assault testified that her hymen was not intact at that time. The emergency room physician further stated that there was a large amount of discharge in her vaginal vault and a small tear in the posterior wall of the vault.

Investigator Teresa Evans was assigned to the case when the rape was reported. The victim described the rapist as a bearded man with glasses. Evans canvassed the neighborhood, asking if anyone had seen someone fitting this description. Defendant, who wore a beard and glasses, was staying with his sister's family next door to the victim's apartment. Investigator Evans testified that defendant appeared very nervous and was reluctant to talk when she asked him questions. She obtained his birth date and social security number, and subsequently discovered that he had a prior rape conviction. Evans returned several days later to ask defendant to have blood drawn for DNA testing, which he agreed to do. Defendant had shaved off his beard at that time.

Several months later, Evans received the results of the DNA testing. Four probes of defendant's DNA were conducted. Defendant's DNA matched the DNA taken from semen at the rape scene in three probes. The evidence showed that depending on whose figures are used, there is a one in one million or one in one hundred thousand chance of this happening randomly. The fourth probe did not produce a match, but the State's expert did not consider this probe in making his conclusion because of evidence of degradation of the DNA sample. Generally, if any of the probes do not match, the DNA is not the same and the suspect is eliminated. Defendant's expert said the State should not have assumed the failure to match on the fourth probe was the result of degradation and described tests that could have been used to confirm the degradation but were not. Defendant's expert acknowledged, however, that it was very unlikely that there would be matches on three probes but not on the fourth.

1. Viewed in a light most favorable to the verdict, this evidence was sufficient to enable rational jurors to find defendant guilty of rape beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Defendant argues that the trial court erred in allowing the State to introduce evidence regarding a prior rape conviction. Evidence of an independent offense is admissible if, at a hearing outside the presence of the jury, the State establishes that it is presenting the evidence for a proper purpose, that the defendant did in fact commit the independent offense, and that the independent offense and the

charged offense are sufficiently similar that proof of the former tends to prove the latter. *Williams v. State*, 261 Ga. 640 (2b) (409 SE2d 649) (1991). The hearing, as well as the trial court's determination that the three requirements have been met, must be on the record. Id.

In this case, a pre-trial hearing was held at which the State said it was offering the evidence to show bent of mind, identity and motive. The State presented a certified copy of the conviction based on defendant's guilty plea and stated that witnesses would testify that in the independent offense, like the instant one, defendant entered the residence of a woman he did not know and raped her. Defendant argued that the crimes were dissimilar because the victim in the prior offense was younger (age 20) and not mentally retarded, and further argued that any probative value of the evidence was outweighed by its prejudicial impact. At the end of the hearing the trial court ruled that the evidence would be admitted. The State's purpose for offering the evidence was a permissible one, see *Holloway v. State*, 187 Ga. App. 716 (1) (371 SE2d 259) (1988), and defendant's conviction based on his guilty plea established that he did in fact commit the offense, see *Adams v. State*, 208 Ga. App. 29 (1) (430 SE2d 35) (1993). Moreover, we agree with the trial court that, despite some dissimilarities, the offenses were sufficiently similar to make the independent offense relevant. See *Davis v. State*, 180 Ga. App. 190 (2) (348 SE2d 730) (1986). Accordingly, the trial court did not err in ruling the evidence of the prior offense admissible.

Defendant further argues that even if the requirements for admissibility set forth in *Williams* were met, reversal is required because the trial court did not make the explicit and specific determinations required by *Adams*, 208 Ga. App. at 35-36 (3) (d). In *Adams*, we held that "[i]n *subsequently* making the three determinations of *Williams*," the trial court should explicitly state its determination as to each of the three requirements individually, and should also explicitly state its determination that the probative value of the evidence outweighs its prejudicial impact. (Emphasis supplied.) Id. at 35. The determination of admissibility at issue here was made prior to the decision in *Adams*, however, so the requirements established by that case do not apply. Moreover, we note that the State properly addressed each of the three *Williams* prongs individually at the hearing, and defendant argued that the probative value of the evidence was outweighed by the prejudicial impact before the trial court made its ruling on admissibility. Under these circumstances, it appears that the court considered everything it should have considered and its failure to make more explicit determinations did not constitute reversible error.

3. Defendant contends the trial court erred in denying his motion to strike the victim's testimony on the grounds that she was mentally

incompetent. In response to questioning, the victim stated that she knew what a promise was and that it was good to keep a promise and bad to break it, and then she promised to tell the truth. The trial court has broad discretion to determine the competency of witnesses, and its determination will not be overturned unless the discretion is abused. See *Gallagher v. State*, 196 Ga. App. 153 (395 SE2d 358) (1990); OCGA § 24-9-7 (a). The trial court did not abuse its discretion in this case.

4. Defendant's assertion that the testimony of the victim's personal physician should have been excluded as irrelevant is also without merit. One of defendant's arguments at trial was that there was no penetration because semen was found on the sheet but not in the victim's vagina. The personal physician's testimony that the hymen of the 50-year-old victim was unbroken eight months prior to the assault, coupled with the emergency room physician's testimony that her hymen was gone after the assault, was clearly relevant to the issue of whether penetration occurred. Thus, the trial court did not err in admitting this testimony.

*Judgment affirmed. Birdsong, P. J., and Andrews, J., concur.*

DECIDED DECEMBER 23, 1993 —
RECONSIDERATION DENIED MARCH 8, 1994.

*Joe F. Harris*, for appellant.
*T. Joseph Campbell, District Attorney, H. Gray Skelton, Jr., Assistant District Attorney*, for appellee.